BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
PATRICIA N. SYVERSON (CA SBN 203111)
MANFRED P. MUECKE (CA SBN 222893)
600 W. Broadway, Suite 900
San Diego, California 92101
psyverson@bffb.com
mmuecke@bffb.com
Telephone: (619) 798-4593

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
ELAINE A. RYAN (*To Be Admitted Pro Hac Vice*)
CARRIE A. LALIBERTE (*To Be Admitted Pro Hac Vice*)
2325 E. Camelback Rd. Suite 300
Phoenix, AZ 85016
eryan@bffb.com
claliberte@bffb.com
Telephone: (602) 274-1100

*Attorneys for Plaintiff*
*Additional Attorneys on Signature Page*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATASHA PARACHA, On Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MILLS, INC., a Delaware Corporation<br><br>Defendant. | Case No.:   2:18-cv-07659<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*; and<br>2. VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, Civil Code §1750 *et seq.*<br><br>DEMAND FOR JURY TRIAL |

Class Action Complaint

Plaintiff Natasha Paracha brings this action on behalf of herself and all others similarly situated against Defendant General Mills, Inc. and states:

**FACTUAL ALLEGATIONS**

1. Defendant manufactures, markets, sells, and distributes various food products. This lawsuit concerns four of those products: Cheerios Toasted Whole Grain Oat Cereal, Nature Valley Granola Protein Oats n' Honey, Nature Valley Crunchy Granola Bars – Oat's n' Honey, and Lucky Charms (the "Products").[1]

2. In marketing its Products, Defendant seeks to appeal to the consuming public's ever-growing health consciousness and increasing appetite for nutritious, wholesome foods that will benefit their health and avoidance of highly-processed foods with non-healthy attributes such as GMOs, artificial additives, gluten, added sugars, and hydrogenated oils.

3. Defendant makes several detailed representations about the health attributes of its Products on the front of the Product packages. For example, Defendant represents on the front of each and every Cheerios Toasted Whole Grain Oat Cereal Product that the Product is "made with 100% whole grain oats", "can help lower cholesterol" and "may reduce the risk of heart disease", is "simply made" and "Gluten Free", contains "NO artificial flavors [or] colors", and the "1st Ingredient [is] whole grain oats". Further, on the top of the box, which consumers see when they pick the Product up off of the shelf and continue to see every morning that they eat Cheerios, Defendant represents in all capital letters against a white background on an otherwise yellow box that the "FIRST INGREDIENT [is] WHOLE GRAIN" and that "A WHOLE GRAIN FOOD IS MADE BY USING ALL THREE PARTS OF THE GRAIN. ALL GENERAL MILLS BIG G CEREALS CONTAIN MORE WHOLE GRAIN THAN ANY OTHER SINGLE INGREDIENT." Defendant makes one or

---

[1] Plaintiff reserves the right to add additional products upon completion of discovery.

Class Action Complaint

more similar attribute representations on the front of its other Product packages. These representations are collectively referred to as the "Product healthy attribute representations".

4. The Product healthy attribute representations lead reasonable consumers to believe the Products will foster their "good health" and not potentially harm their health.

5. However, recent testing by the Environmental Working Group (EWG), a nonprofit organization dedicated to protecting human health and the environment, revealed that Defendant's Products contain glyphosate, one of the most widely used herbicides in the United States. EWG's Children's Health Initiative, "Breakfast With a Dose of Roundup?" August 15, 2018, *available at* https://www.ewg.org/childrenshealth/glyphosateincereal/#.W3TTbPZFw2w ("EWG") (last visited August 23, 2018). Each year, more than 250 million pounds of glyphosate is sprayed on American crops, including wheat, barley, and oats just before they are harvested. *Id.*

6. The EWG's glyphosate findings confirm the results of a study published in 2016 by the nonprofit Food Democracy Now that found glyphosate in Defendant's Cheerios Toasted Whole Grain Oat Cereal Product. *See* Glyphosate: Unsafe on Any Plate, Food Testing Results and Scientific Reasons for Concern, at p. 5, *available at* https://s3.amazonaws.com/media.fooddemocracynow.org/images/FDN_Glyphosate _FoodTesting_Report_p2016.pdf (last visited August 27, 2018).

7. The International Agency for Research on Cancer, part of the World Health Organization, has determined that glyphosate is "probably carcinogenic to humans". IARC Monographs Volume 112: evaluation of five organophosphate insecticides and herbicides, March 20, 2015, *available at* http://www.iarc.fr/en/media-centre/iarcnews/pdf/MonographVolume112.pdf (last visited August 23, 2018). Glyphosate is even more dangerous for children, who are

- 2 -
Class Action Complaint

more susceptible to carcinogens. *See EWG.*

8. Recently, Defendant announced that it will drop the "100% Natural " representation it makes on its Nature Valley Crunch Granola Bars – Oats n' Honey Product as the Product contains glyphosate. *See* https://www.bloomberg.com/news/articles/2018-08-23/nature-valley-drops-100-natural-claim-after-pesticide-suit (last visited August 27, 2018). Defendant has not, however, indicated it will disclose the presence of glyphosate on any of the Product packages.

9. Because it is a carcinogen with no nutritional value, the presence of *any* amount of glyphosate in the Products is material to reasonable consumers. No reasonable consumer would purchase the Products knowing that they contained glyphosate.

10. Even though Defendant has acknowledged that Nature Valley Crunch Granola Bars – Oats n' Honey Product contains the probable carcinogen glyphosate and knew that the other Products contain glyphosate or, at a minimum, that it could not guarantee the Products did not contain glyphosate given its wide use as a pesticide, Defendant does not disclose this information on the front of the Product labels, choosing instead to specifically identify only the healthy attributes of its Products. Nor does Defendant include this information on the back or sides of the packages, where more detailed Product information is generally found, instead choosing to repeat and reinforce the healthy attributes identified on the front of the packages. In fact, nowhere on its Product packages – inside or out – does Defendant disclose that the Products contain or likely contain glyphosate, such that Defendant's Product healthy attribute representations are misleading half-truths.

11. As the manufacturer and distributor of the Products, Defendant knew that the Products contained or likely contained glyphosate. By contrast, Plaintiff and consumers did not and do not have access to such information. Nor is that fact easily

- 3 -
Class Action Complaint

discovered by Plaintiff and consumers before purchase of the Products. Because Defendant had knowledge that the Products contain or likely contain glyphosate, and Plaintiff and consumers did not, Defendant had a duty to disclose that fact—and that glyphosate is a probable carcinogen—to consumers, which it did not do.

12. Consumers have a reasonable expectation that material product information, such as the presence of a probable carcinogen like glyphosate, will be provided by a product manufacturer, especially when the manufacturer affirmatively identifies the health-related attributes of its Products such as "Gluten Free", "100% Whole Grain", and "NO Artificial Flavors [or] Colors". By only identifying the healthy attributes of its Products, emphasizing its Products are made using all three parts of the grain, and failing to disclose that the Products contain or likely contain glyphosate, Defendant actively concealed this information from Plaintiff, Class members, and the general public. *See* representative Product labels, attached hereto as Exhibit A.

13. Defendant had a duty to disclose the fact that the Products contain or likely contain glyphosate and that glyphosate is a probable carcinogen, which was known to Defendant and unknown and/or not reasonably accessible to Plaintiff and consumers, on its Product labels where the disclosure could be viewed by Plaintiff and consumers at the point-of-sale.

14. By failing to disclose the fact that the Products contain or likely contain glyphosate and continuing to sell the Products in packages omitting this information, Defendant has and continues to deceive and mislead consumers, including Plaintiff.

15. As a result of Defendant's misleading half-truths and material nondisclosures, consumers will continue to purchase Defendant's Products that, unbeknownst to them, contain or likely contain glyphosate.

16. Plaintiff brings this action on behalf of herself and other similarly situated consumers who purchased the Products to halt the dissemination of this

- 4 -
Class Action Complaint

misleading and deceptive advertising message, correct the misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the Products. Based on violations of California unfair competition laws (detailed below), Plaintiff seeks declaratory, injunctive, and restitutionary relief for consumers who purchased the Products.

## JURISDICTION AND VENUE

17. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some members of the Class are citizens of a state different from Defendant.

18. This Court has personal jurisdiction over Defendant because Defendant is authorized to conduct and do business in California, including this District. Defendant marketed, promoted, distributed, and sold the Products in California, and Defendant has sufficient minimum contacts with this State and/or sufficiently availed itself of the markets in this State through its promotion, sales, distribution, and marketing within this State, including this District, to render the exercise of jurisdiction by this Court permissible.

19. Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b) because a substantial part of the events giving rise to Plaintiff's claims occurred while she resided in this judicial district. Venue is also proper under 18 U.S.C. §1965(a) because Defendant transacts substantial business in this District.

## PARTIES

20. Plaintiff Natasha Paracha resides in Los Angeles County, California. Throughout the relevant period, Plaintiff Paracha routinely was exposed to, saw, and relied upon Defendant's Product healthy attribute representations by reading the Cheerios Toasted Whole Grain Oat Cereal Product label at various stores in Walnut, California, including Vons and Stater Bros. Plaintiff Paracha purchased the Product

for herself, her two young children, and her father for approximately $4/box. At all relevant times, Plaintiff was unaware that the Product contained glyphosate or that Defendant could not guarantee it did not contain glyphosate. Had Defendant disclosed on the package that the Product contained or may contain glyphosate, Plaintiff Paracha would have seen and read that disclosure and would not have purchased the Product. As a result, Plaintiff Paracha suffered injury in fact and lost money at the time of purchase.

21. Defendant General Mills, Inc. is a Delaware corporation whose headquarters is located at Number One General Mills Blvd, Minneapolis, MN 55426. General Mills, Inc. manufactures, advertises, markets, distributes, and/or sells the Cheerios Toasted Whole Grain Oat Cereal, Nature Valley Granola Protein Oats n' Honey, Nature Valley Crunchy Granola Bars – Oats n' Honey, and Lucky Charms Products to tens of thousands of consumers in California and throughout the United States.

## CLASS DEFINITION AND ALLEGATIONS

22. Plaintiff brings this action on behalf of herself and all other similarly situated consumers pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

**Multi-State Class Action**
All consumers who, within the applicable statute of limitations period until the date notice is disseminated, purchased the Products in California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington.[2]

---

[2] The States in the Multistate Class are limited to those States with similar consumer fraud laws as applied to the facts of this case: California (Cal. Bus. & Prof. Code §17200, *et seq.*); Florida (Fla. Stat. §501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 502/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws §445.901, *et seq.*); Minnesota (Minn. Stat. §325F.67, *et seq.*); Missouri (Mo. Rev. Stat. 010, *et seq.*); New Jersey (N.J. Stat. §56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §349, *et seq.*); and Washington (Wash. Rev. Code §19.86.010, *et seq.*). These statutes are referred to as "Similar Consumer Fraud Statutes."

> Excluded from this Class are Defendant and its officers, directors, employees and those who purchased the Products for the purpose of resale.

23. In the alternative to a Multi-State Class, Plaintiff seeks certification of the following California-Only Class:

> **California-Only Class Action**
> All California consumers who within the applicable statute of limitations period until the date notice is disseminated, purchased the Products.
>
> Excluded from this Class are Defendant and its officers, directors and employees, and those who purchased the Products for the purpose of resale.

24. **Numerosity**. The members of the Classes are so numerous that joinder of all members of the Classes is impracticable. Plaintiff is informed and believes that the proposed Classes contain thousands of purchasers of the Products who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

25. **Existence and Predominance of Common Questions of Law and Fact**. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a) whether Defendant's alleged conduct is unlawful;

(b) whether the alleged conduct constitutes violations of the laws asserted;

(c) whether Defendant engaged in misleading and/or deceptive advertising; and

(d) whether Plaintiff and Class members are entitled to appropriate remedies, including restitution and injunctive relief.

26. **Typicality.** Plaintiff's claims are typical of the claims of the members

of the Classes because, *inter alia*, all Class members were injured through the uniform misconduct described above.  Plaintiff is also advancing the same claims and legal theories on behalf of herself and all Class members.

27. **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of Class members.  Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Classes.

28. **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant.  It would thus be virtually impossible for members of the Classes, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

29. Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiff and Class members.

//

//

//

# COUNT I
## Violation of Business & Professions Code §17200, *et seq.* and Similar Consumer Fraud Statutes, *supra* note 2
### (On Behalf of the Multi-State or California-Only Class)

30. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

31. Plaintiff brings this claim individually and on behalf of the Classes.

32. As alleged herein, Plaintiff has suffered injury in fact and lost money or property at the time of purchase as a result of Defendant's conduct because she purchased Defendant's Products in reliance on Defendant's Product healthy attribute representations. Had Plaintiff known that the Product contained glyphosate or that Defendant could not guarantee it did not contain glyphosate, Plaintiff would not have purchased the Product.

33. The Unfair Competition Law, Business & Professions Code §17200, *et seq.* ("UCL") prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising. The Similar Consumer Fraud Statutes likewise prohibit the use of unfair or deceptive practices in the course of trade or commerce, and are to be liberally construed.

34. In the course of conducting business, Defendant committed "unlawful" business practices by, *inter alia*, making the Product healthy attribute representations, which are misleading half-truths, and the material omissions (which also constitutes advertising within the meaning of §17200) regarding the Products' labeling, as set forth more fully herein, and violating Civil Code §§ 1552, 1573, 1709, and 1711, the California Legal Remedies Act, Civil Code § 1750, *et seq.*, Business & Professions Code §§ 17200, *et seq.* and 17500, *et seq.*, the Similar Consumer Fraud Statutes, and the common law.

35. Plaintiff reserves the right to allege other violations of law, which

constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

36. In the course of conducting business, Defendant committed "unfair" business acts or practices by, *inter alia*, making the Product healthy attribute representations, which are misleading half-truths, and material omissions (which also constitutes advertising within the meaning of § 17200) regarding the Products' labeling, as set forth more fully herein. There is no societal benefit from false advertising, only harm. While Plaintiff and the public at large were and continue to be harmed, Defendant has been unjustly enriched by its misleading half-truths and material omissions. Because the utility of Defendant's conduct (zero) is outweighed by the gravity of harm to Plaintiff, consumers, and the competitive market, Defendant's conduct is "unfair" having offended an established public policy. Further, Defendant engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to the public at large.

37. There were reasonable available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

38. In the course of conducting business, Defendant committed "fraudulent business act[s] or practices" and deceptive or misleading advertising by, *inter alia*, making the Product healthy attribute representations, which are misleading half-truths, and the material omissions (which also constitutes advertising within the meaning of §17200) regarding the Products as set forth more fully herein.

39. Defendant's actions, claims, and misleading statements, as more fully set forth above, are misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200, *et seq*. and the Similar Consumer Fraud Statutes.

40. Plaintiff relied on Defendant's Product healthy attribute representations and was in fact injured as a result of those misleading half-truths and material

omissions. Plaintiff has suffered injury in fact and lost money as a result of her purchases of Defendant's Products.

41. Unless restrained and enjoined, Defendant will continue to engage in the above described conduct. Accordingly, injunctive relief is appropriate.

42. Plaintiff, on behalf of herself, all others similarly situated, and the general public, seeks declaratory relief and an injunction prohibiting Defendant from continuing such practices, restitution of all money obtained from Plaintiff and the members of the Classes collected as a result of unfair competition, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203 and the Similar Consumer Fraud Statutes.

**COUNT II**
**Violations of the Consumers Legal Remedies Act – Civil Code § 1750 *et seq.***
**(On Behalf of the California-Only Class)**

43. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

44. Plaintiff brings this claim individually and on behalf of the California-Only Class.

45. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq*. (the "Act").

46. Plaintiff is a consumer as defined by California Civil Code § 1761(d). The Products are "goods" within the meaning of the Act.

47. Defendant violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the California-Only Class which were intended to result in, and did result in, the sale of the Products:

    (5) Representing that [the Products have] . . . characteristics, . . . uses [and] benefits . . . which [they do] not have . . . .

- 11 -
Class Action Complaint

\* \* \*

(7) Representing that [the Products] are of a particular standard, quality, or grade … if they are of another.

48. Defendant violated the Act by making the Product healthy attribute representations, which are misleading half-truths, and the material omissions, as described above, when it knew or should have known that the misleading half-truths and material omissions were misleading and deceptive.

49. Pursuant to California Civil Code § 1782(d), Plaintiff and the California-Only Class seek a Court Order declaring Defendant to be in violation of the CLRA, enjoining the above-described wrongful acts and practices of Defendant, and ordering restitution and disgorgement.

50. Pursuant to § 1782 of the Act, Plaintiff notified Defendant in writing by certified mail of the particular violations of § 1770 of the Act and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to so act. A copy of the letter is attached hereto as Exhibit B.

51. If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782 of the Act, Plaintiff will amend this Complaint to add claims for actual, punitive, and statutory damages as appropriate.

52. Pursuant to § 1780 (d) of the Act, attached hereto as Exhibit C is the affidavit showing that this action has been commenced in the proper forum.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A. Certifying the Classes as requested herein;

B.  Issuing an order declaring that Defendant is in violation of the UCL and CLRA;

C.  Enjoining Defendant's conduct;

D.  Awarding restitution and disgorgement of Defendant's revenues to Plaintiff and the proposed Class members;

E.  Awarding attorneys' fees and costs; and

F.  Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial of her claims by jury to the extent authorized by law.

Dated: August 31, 2018

BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.

/s/*Patricia N. Syverson*
Patricia N. Syverson (203111)
Manfred P. Muecke (222893)
600 W. Broadway, Suite 900
San Diego, California 92101
psyverson@bffb.com
mmuecke@bffb.com
Telephone: (619) 798-4593

BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
Elaine A. Ryan (*To Be Admitted Pro Hac Vice*)
Carrie A. Laliberte (*To Be Admitted Pro Hac Vice*)
2325 E. Camelback Rd., Suite 300
Phoenix, AZ 85016
eryan@bffb.com
claliberte@bffb.com
Telephone: (602) 274-1100

SIPRUT PC
Stewart M. Weltman (*To Be Admitted Pro Hac Vice*)
Todd L. McLawhorn (*To Be Admitted Pro Hac Vice*)
Michael Chang (*To Be Admitted Pro Hac Vice*)
17 North State Street
Chicago, Illinois 60602
sweltman@siprut.com
tmclawhorn@siprut.com

mchang@siprut.com
Telephone: (312) 236-0000

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed the 31st day of August 2018.

*/s/Patricia N. Syverson*
Patricia N. Syverson